Case 7:21-cv-04213-NSR   Document 1-1   Filed 05/11/21   Page 1 of 22

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------- x

DAVID LEE,

                       Plaintiff,

        - against –

RAYMOND BROTHERS, IAM SPORTS &
ENTERTAINMENT, INC., and
INTERNATIONAL ATHLETE MANAGEMENT,
INC.,

                     Defendants.

------------------------------------------------- x

Index No.

Date Purchased:  March 29, 2021

## SUMMONS

Plaintiffs designate New York
County as the place of trial.

TO THE ABOVE NAMED DEFENDANTS:

      YOU ARE HEREBY SUMMONED to answer the complaint in this action and to

serve a copy of your answer, or, if the complaint is not served with this summons, to serve a

notice of appearance, on Plaintiff's attorneys within 20 days after the service of this summons,

exclusive of the day of service (or within 30 days after the service is complete if this summons is

not personally delivered to you within the State of New York); and in the case of your failure to

Case 7:21-cv-04213-NSR   Document 1-1   Filed 05/11/21   Page 2 of 22

appear or answer, judgment will be taken against you by default for the relief demanded in the

complaint.

Dated:   White Plains, New York
            March 29, 2021

                                                     BRICK LAW PLLC


By: _____/s/   Brian H. Brick_____
              Brian H. Brick, Esq.

2 Milford Close
White Plains, New York  10606
(917) 696-3430
brianbrick@bricklawpllc.com

*Attorneys for Plaintiff*


<u>Defendants' Addresses</u>:


Raymond Brothers
2351 Applewood Lane
Santa Rosa Valley, California  93012


IAM Sports & Entertainment, Inc.
c/o Raymond Brothers
2351 Applewood Lane
Santa Rosa Valley, California  93012


International Athlete Management, Inc.
c/o Raymond Brothers
2351 Applewood Lane
Santa Rosa Valley, California  93012

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------- x

DAVID LEE,

                           Plaintiff,

           - against –

RAYMOND BROTHERS, IAM SPORTS &
ENTERTAINMENT, INC., and
INTERNATIONAL ATHLETE
MANAGEMENT, INC.,

                       Defendants.

------------------------------------------- x

Index No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

    Plaintiff  David Lee ("Plaintiff"), by his attorneys Brick Law PLLC, as and for his

complaint against defendants Raymond Brothers, IAM Sports & Entertainment, Inc. ("IAM

Sports"), and International Athlete Management, Inc. ("IAM") (and collectively, "Defendants")

herein alleges as follows:

### NATURE OF THE ACTION

    1.     In direct violation of the regulations governing NBA player agents, Defendants

influenced a player entering the draft by buying him a brand new pickup truck – in exchange for

the player terminating Plaintiff's services and switching to Defendants instead.

    2.     And, in direct violation of New York law, Defendants tortiously interfered with

Plaintiff's agent agreement that he had with a prospective NBA player, making Defendants liable

to Plaintiff for the benefits of the bargain he would have earned without their unlawful

interference.

3.    More specifically, Plaintiff represented Mitchell Robinson as his agent about nine months before the NBA draft.

4.    But, about three months before the draft, Defendants approached Mr. Robinson and promised to buy him a new pickup truck if he would switch to their agency.

5.    Mr. Robinson was successfully lured by the promise because he terminated Plaintiff's services at the same time that Defendants bought Mr. Robinson a brand new 2017 Chevrolet Silverado 1500 Pickup truck from Best Chevrolet in Kenner, Louisiana for $34,464.50.

6.    Nearly three months later, the New York Knicks drafted Mr. Robinson in the second round of the 2018 NBA Draft with the 36th overall pick.

7.    Mr. Robinson's success in the draft would have provided Plaintiff with the compensation to which he was entitled under his agent agreement with Mr. Robinson.

8.    As a result of Defendants' unlawful interference with Plaintiff's contract – and Defendants' blatant bribery in violation of the NBPA Regulations (as defined below) – Plaintiff has been substantially injured and is entitled to damages equal to what he would have earned in the absence of Defendants' tortious interference.

9.    In addition, because Defendants have flagrantly flouted the rules with willful and wanton disregard, Defendants are also liable for punitive damages that is clearly needed to correct their predatory behavior.

**PARTIES**

10.    Plaintiff David Lee is a citizen of the State of New York.

11.    Defendant Raymond Brothers is a citizen of the State of California with an address located at 2351 Applewood Lane, Santa Rosa Valley, California, 93012.  Upon

2

Case 7:21-cv-04213-NSR   Document 1-1   Filed 05/11/21   Page 5 of 22

information and belief, Raymond Brothers is the president and chief executive officer of defendants IAM Sports and IAM.

12.     Defendant IAM Sports & Entertainment Inc. is a corporation organized and existing under the laws of the State of California with a principal place of business located at 2351 Applewood Lane, Santa Rosa Valley, California, 93012.,  Upon information and belief, IAM Sports & Entertainment, Inc. had a prior business address located at 30101 Agoura Court, Suite 220, Agoura Hills, California 91301l.

13.     Defendant International Athlete Management, Inc. is a corporation organized and existing under the laws of the State of California with a principal place of business located at 2351 Applewood Lane, Santa Rosa Valley, California, 93012.,  Upon information and belief, International Athlete Management, Inc. had a prior business address located at 30101 Agoura Court, Suite 220, Agoura Hills, California 91301l.

## JURISDICTION AND VENUE

14.     This Court has personal jurisdiction over defendant Raymond Brothers pursuant to CPLR Section 302(a) because his conduct as alleged herein caused damages to Plaintiff within the State of New York.

15.     This Court has personal jurisdiction over defendant IAM Sports & Entertainment, Inc. pursuant to CPLR Section 302(a) because its conduct as alleged herein caused damages to Plaintiff within the State of New York.

16.     This Court has personal jurisdiction over defendant International Athlete Management, Inc. pursuant to CPLR Section 302(a) because its conduct as alleged herein caused damages to Plaintiff within the State of New York.

3

Case 7:21-cv-04213-NSR   Document 1-1   Filed 05/11/21   Page 6 of 22

17.     Venue is proper in this Court pursuant to CPLR Section 503 because a substantial part of the events or omissions giving rise to the claim occurred within the County of New York.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### A.     Plaintiff's Agent Agreement With Mitchell Robinson

18.     On September 19, 2017, David Lee and Mitchell Robinson entered into a Standard Player Agent Contract (the "Contract").  A copy of the Contract is annexed hereto as Exhibit 1.

19.     Under the Contract, David Lee (as the "Agent") agreed to represent Mitchell Robinson (as the "Player") as Mr. Robinson's sports agent and representative in his dealings with the NBA team for which he played.

20.     The Contract, which is governed by and made subject to New York law, was also made under the auspices of the National Basketball Players Association Regulations Governing Player Agents (as promulgated and made effective March 7, 1986) (the "NBPA Regulations").

21.     Section 1 of the Contract confirms that Plaintiff was certified as a Player Agent by the National Basketball Players Association (the "NBPA").

22.     Section 3 of the Contract provides for Plaintiff's compensation – calculated as (A) a two percent (2 %) fee based on the Player's compensation with his NBA team if the Player receives the minimum compensation under the NBA-NBPA collective bargaining agreement (the "CBA"), or (B) a four percent (4 %) fee based on the Player's compensation with his NBA team if the Player's compensation is greater than the minimum under the CBA.  (*See* Exh. 1 §§ 3(A), 3(B).)

Case 7:21-cv-04213-NSR   Document 1-1   Filed 05/11/21   Page 7 of 22

23.     As a form agreement, Section 6 of the Contract contains the fifteen (15) day termination provision provided for in the NBPA Regulations – permitting either Plaintiff or Mr. Robinson to terminate the Contract on fifteen (15) days written notice.

24.     A little over six months later on March 28, 2018, Mitchell Robinson purportedly sent Plaintiff a letter terminating Plaintiff's services as his Agent.

25.     Mr. Robinson's March 28, 2018 notice stated that the termination was "[e]ffective immediately" – even though Section 6 of the Contract required a minimum of fifteen days' notice for any termination.

26.     An attempt to have an immediately effective termination under the Contract is a breach of the notice provision requiring fifteen days' notice.

27.     Based on the fifteen day written notice provision, the Contract was officially terminated on April 12, 2018.

28.     Plaintiff remained Mr. Robinson's Agent under the Contract until April 12, 2018.

**B.      Defendants Buy Mitchell Robinson A New 2017 Chevrolet Silverado 1500
Pickup Truck To Induce Him To Terminate The Contract With Plaintiff**

29.     Defendants offered Mr. Robinson a brand new pickup truck to induce him to terminate the Contract with Plaintiff and to use Defendants' agency services instead.

30.     Defendants' unlawful inducement and effective bribery led Mr. Robinson to send Plaintiff the March 28, 2018 termination notice.

31.     Then, Defendants made good on their promise just two days later when they bought Mr. Robinson a brand new pickup truck from Best Chevrolet in Kenner, Louisiana.

32.     More specifically, on March 30, 2018, Defendants ordered (and then fully paid for) a 2017 Chevrolet Silverado 1500 pickup truck from Best Chevrolet in Kenner, Louisiana.

Case 7:21-cv-04213-NSR   Document 1-1   Filed 05/11/21   Page 8 of 22

33.     At the time Defendants ordered the pickup truck on March 30, 2018, Plaintiff was still Mr. Robinson's agent under the Contract because the fifteen-day notice period under the termination clause had not yet elapsed.

34.     Although Mitchell Robinson is listed as the "customer" on the order forms and receipt, Defendants actually bought the pickup truck and actually paid for the pickup truck using Defendants' own funds.

35.     More specifically, the order forms from Best Chevrolet list the total due for the pickup truck as $34,464.50.

36.     In addition, Defendants wrote Best Chevrolet (as the payee) a check (Check Number 4139) drawn from the bank account of International Athlete Management, Inc. at Bank of America in the amount of $34,464.50.

37.     Best Chevrolet's records show a corresponding receipt of Check Number 4139 from International Athlete Management, Inc. paying the full balance due of $34,464.50 for the pickup truck Defendants bought for Mr. Robinson.

## C.     The NBPA Regulations Prohibit Defendants' Bribery

38.     The NBPA Regulations require any "player agent" (like Plaintiff or like Defendants) to have a current certification and to sign a "standard player agent fee agreement" with each player the agent represents.  (*See* NBPA Regulations Section 3(1) ("Prohibited Conduct Subject to Discipline").)

39.     For Defendants to represent Mr. Robinson properly as an agent, they would have to have entered into a written standard player agent fee agreement (with that written agreement containing the standard fifteen-day termination provision like the provision contained in Section 6 of the Contract that Plaintiff had with Mr. Robinson).

6

40.     Section 3(2) of the NBPA Regulations provides that "[t]o further effectuate the objectives of these Regulations, player agents are prohibited from: . . . (2) Providing or offering a monetary inducement (other than a fee less than the maximum fee contained in the standard fee agreement established by these Regulations) to any player (including a rookie) or college athlete to induce or encourage that person to utilize his services." (*See* NBPA Regulations Section 3(2).)

41.     Defendants blatantly violated Section 3(2) because they offered and then bought a new 2017 pickup truck for Mr. Robinson to induce him to terminate the Contract with Plaintiff and to hire Defendants instead as his agents.

42.     The prohibitions in Section 3(2) also apply to offering money or anything else of value to a player's family members or anyone else for the same purpose of inducing the player to use the agent's services.

43.     Despite writing "Mitchell Car Loan" on the memo line of their check, Defendants did not mask their impropriety – and Defendants violated Section 3(2) by buying Mr. Robinson a brand new pickup truck just a couple of months before the NBA Draft.

44.     In addition, listing Mitchell Robinson as the customer on Best Chevrolet's forms does not change that Defendants paid Best Chevrolet $34,464.50 for a new pickup truck for Mr. Robinson at the same time that he terminated Plaintiff's services and appears to have engaged Defendants' services.

**D.      Mitchell Robinson Is Drafted By The New York Knicks In
          The Second Round Of The NBA Draft Just Two Months Later**

45.     In the NBA Draft held on June 21, 2018, the New York Knicks drafted Mitchell Robinson with their Second Round pick (Number 36 overall).

46.     Mr. Robinson has played Center for the Knicks since being drafted in 2018.

7

47.     On July 8, 2018, Mr. Robinson signed a four-year contract with the Knicks.

48.     For contracts signed during the 2018-2019 season, the NBA league minimum salary under the 2017 CBA for rookies was $838,464.

49.     Mr. Robinson's base salary for the 2018-2019 season was $1,485,440 – above the league minimum.

50.     The minimum salary for the second year of a rookie contract signed during the 2018-2019 season was $1,416,852.

51.     Mr. Robinson's base salary for the 2019-2020 season was $1,559,712 – above the league minimum.

52.     The minimum salary for the third year of a rookie contract signed during the 2018-2019 season is $1,663,861.

53.     Mr. Robinson's base salary for the 2020-2021 season is $1,663,861 (the league minimum).

54.     The minimum salary for the fourth year of a rookie contract signed during the 2018-2019 season is $1,802,057.

55.     Mr. Robinson's base salary for the 2021-2022 season will be $1,802,057 (the league minimum).

**E.     Plaintiff's Damages**

56.     Mr. Robinson's salary for the 2018-2019 season was above the league minimum, which triggered the provision in Section 3(B) of the Contract granting Plaintiff a fee of 4 % of Mr. Robinson's salary for that season.

57.     Mr. Robinson's base salary for the 2018-2019 season was $1,485,440, and four percent of that amount is 59,417.60.

8

58.     Mr. Robinson's salary for the 2019-2020 season was above the league minimum, which triggered the provision in Section 3(B) of the Contract granting Plaintiff a fee of 4 % of Mr. Robinson's salary for that season.

59.     Mr. Robinson's base salary for the 2019-2020 season was $1,559,712, and four percent of that amount is $62,388.48.

60.     Mr. Robinson's salary for the 2020-2021 season is equal to the league minimum, which triggers the provision in Section 3(A) of the Contract granting Plaintiff a fee of 2 % of Mr. Robinson's salary for that season.

61.     Mr. Robinson's base salary for the 2020-2021 season is $1,663,861, and two percent of that amount is $33,277.22.

62.     Mr. Robinson's base salary for the 2021-2022 season will be $1,802,057, and two percent of that amount is $36,041.14.

63.     Without Defendants' improper conduct and outright bribery, Plaintiff would have earned (and should have earned) a total fee of $191,124.44 for the four years of Mr. Robinson's contract with the Knicks.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Tortious Interference With Contract Against All Defendants)

64.     Plaintiff repeats and re-alleges each and every one of the foregoing allegations as though fully set forth herein.

65.     Plaintiff and Mr. Robinson had a valid and binding Standard Player Agent Contract as of September 19, 2017 under which Plaintiff was Mr. Robinson's agent for his dealings with any NBA franchise.  (*See* Exh. 1.)

66.     Raymond Brothers had specific knowledge of the Contract and knew in 2018 that Plaintiff already represented Mr. Robinson.

9

Case 7:21-cv-04213-NSR   Document 1-1   Filed 05/11/21   Page 12 of 22

67.     IAM Sports had specific knowledge of the Contract and knew in 2018 that Plaintiff already represented Mr. Robinson.

68.     IAM had had specific knowledge of the Contract and knew in 2018 that Plaintiff already represented Mr. Robinson.

69.     Without any justification or excuse for doing so, Raymond Brothers intentionally induced Mr. Robinson to breach the Contract by luring Mr. Robinson with a new 2017 Chevrolet Silverado 1500 pickup truck (in violation of NBPA Regulations) in exchange for his terminating the Contract with Plaintiff and switching to Defendants' agency services.

70.     Without any justification or excuse for doing so, IAM Sports intentionally induced Mr. Robinson to breach the Contract by luring Mr. Robinson with a new 2017 Chevrolet Silverado 1500 pickup truck (in violation of NBPA Regulations) in exchange for his terminating the Contract with Plaintiff and switching to Defendants' agency services.

71.     Without any justification or excuse for doing so, IAM intentionally induced Mr. Robinson to breach the Contract by luring Mr. Robinson with a new 2017 Chevrolet Silverado 1500 pickup truck (in violation of NBPA Regulations) in exchange for his terminating the Contract with Plaintiff and switching to Defendants' agency services.

72.     Mr. Robinson breached the Contract by notifying Plaintiff of the "immediate" termination of the Contract even though Section 6 provided for a minimum of fifteen days' notice for a termination could become effective.

73.     Mr. Robinson terminated the Contract only because Defendants induced him to do so with the lure of a new 2017 Chevrolet Silverado 1500 pickup truck.

10

74.     Each of Raymond Brothers, IAM Sports, and IAM had a common plan and scheme to lure Mr. Robinson as a client away from Plaintiff through the unlawful use of bribery in violation of the NBPA Regulations.

75.     Raymond Brothers acted in furtherance of the common plan and scheme alleged herein because he (i) specifically approached Mr. Robinson to lure him away from Plaintiff, and (ii) specifically negotiated and ordered the new pickup truck from Best Chevrolet.

76.     IAM Sports acted in furtherance of the common plan and scheme alleged herein because it (i) provided the funding to pay for the new pickup truck that Defendants bought for Mr. Robinson, and (ii) entered into a new agency agreement with Mr. Robinson after he terminated the Contract with Plaintiff.

77.     IAM acted in furtherance of the common plan and scheme alleged herein because it (i) provided the funding to pay for the new pickup truck that Defendants bought for Mr. Robinson, and (ii) tendered the specific check to Best Chevrolet that paid the purchase price for the new pickup truck that Defendants bought for Mr. Robinson.

78.     Because of their common plan and scheme and their overt acts in furtherance of that common plan and scheme, each of Raymond Brothers, IAM Sports, and IAM are primarily and directly liable for their tortious interference with Plaintiff's Contract.

79.     As detailed above, Mr. Robinson's draft results and his four-year agreement with the New York Knicks would have provided Plaintiff with the fee compensation Mr. Robinson had agreed to under the Contract.

80.     Plaintiff suffered the loss of his fee under the Contract as a direct result of Defendants' inducement of Mr. Robinson to terminate the Contract.

81. Defendants' tortious inducement of Mr. Robinson's breach of the Contract and its subsequent termination caused Plaintiff to suffer direct monetary harm of at least $191,124.44.

82. As a direct and proximate result of Defendants' conduct as alleged herein, Plaintiff has suffered compensatory and consequential damages in an amount to be proved at trial.

83. In addition, because Defendants' conduct as alleged herein was done knowingly, intentionally, willfully, and wantonly, Plaintiff is entitled to punitive damages.

<u>**AS AND FOR A SECOND CAUSE OF ACTION**</u>
**(Aiding and Abetting Tortious Interference**
**With Contract Against Raymond Brothers)**

84. Plaintiff repeats and re-alleges each and every one of the foregoing allegations as though fully set forth herein.

85. Each of IAM Sports and IAM tortiously induced Mr. Robinson to breach and to terminate the Contract with Plaintiff by bribing Mr. Robinson with a new 2017 Chevrolet Silverado 1500 pickup truck.

86. Raymond Brothers had actual and specific knowledge that IAM Sports and IAM were tortiously interfering with Plaintiff's Contract because Raymond Brothers knew that Plaintiff represented Mr. Robinson at the time and knew that IAM Sports and IAM promised Mr. Robinson a new pickup truck for switching to their agency services instead.

87. Raymond Brothers provided substantial assistance to IAM Sports's and IAM's tortious interference with Plaintiff's Contract because he (i) specifically approached Mr. Robinson to discuss luring him away from Plaintiff and to Defendants' services, (ii) specifically delivered to Mr. Robinson the promise of a new pickup truck, (iii) negotiated and placed the order with Best Chevrolet for the new 2017 Chevrolet Silverado 1500 pickup truck

12

that Defendants bought for Mr. Robinson, and (iv) signed the check that paid the $34,464.50 price for the new pickup truck to Best Chevrolet.

88.     Raymond Brothers' direct and substantial assistance to IAM Sports's and IAM's tortious interference with Plaintiff's Contract has caused Plaintiff to suffer significant monetary harm.

89.     As a direct and proximate result of Raymond Brothers' conduct as alleged herein, Plaintiff has suffered compensatory consequential damages in an amount to be proved at trial.

90.     In addition, because Raymond Brothers' conduct as alleged herein was done knowingly, intentionally, willfully, and wantonly, Plaintiff is entitled to punitive damages.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Negligence *Per Se* Against All Defendants)

91.     Plaintiff repeats and re-alleges each and every one of the foregoing allegations as though fully set forth herein.

92.     Section 3(2) of the NBPA Regulations prohibits Defendants from "(2) Providing or offering a monetary inducement (other than a fee less than the maximum fee contained in the standard fee agreement established by these Regulations) to any player (including a rookie) or college athlete to induce or encourage that person to utilize his services."  (*See* NBPA Regulations Section 3(2).)

93.     Defendants violated Section 3(2) because they bought a new 2017 Chevrolet Silverado 1500 pickup truck for Mitchell Robinson to induce him to terminate Plaintiff's services and to switch to Defendants' services.

94.     Defendants' violation of Section 3(2) is unexcused and has no valid basis or justification.

13

Case 7:21-cv-04213-NSR Document 1-1 Filed 05/11/21 Page 16 of 22

95. As an agent certified under the NBPA Regulations and subject to protections from abuse by other agents, Plaintiff is a part of the class of individuals and intended beneficiaries for whom the NBPA Regulations are intended to protect.

96. Defendants' outright bribery of Mr. Robinson with a brand new pickup truck is precisely the type of conduct (with the corresponding injury to Plaintiff) that Section 3(2) is designed to address.

97. Plaintiff suffered monetary harm directly caused by Defendants' violations of Section 3(2).

98. As a direct and proximate result of Defendants' conduct as alleged herein, Plaintiff has suffered compensatory and consequential damages in an amount to be proved at trial.

## JURY DEMAND

99. Plaintiff demands a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully prays for a judgment granting:

i. On his First Cause of Action, compensatory, consequential, and punitive damages in an amount to be proved at trial;

ii. On his Second Cause of Action, compensatory, consequential, and punitive damages in an amount to be proved at trial;

iii. On his Third Cause of Action, compensatory and consequential damages in an amount to be proved at trial;

iv. The costs and the expenses related to this action; and

v. Such other and further relief as the Court deems just and proper.

14

Dated:   White Plains, New York
           March 29, 2021

Respectfully Submitted,


BRICK LAW PLLC


By: _____/s/   Brian H. Brick_____
         Brian H. Brick, Esq.

2 Milford Close
White Plains, New York  10606
(917) 696-3430
brianbrick@bricklawpllc.com

*Attorneys for Plaintiff*

# EXHIBIT 1

# STANDARD PLAYER AGENT CONTRACT

AGREEMENT made this _____ 19 _____ day of Sept _____, 20 17, by and

between David Lee _____ (hereinafter the "Agent")

and Mitchell Robinson _____ (hereinafter the "Player").

In consideration of the mutual promises hereinafter contained, the parties hereto promise and agree as follows:

## 1. General Principles

This agreement is entered into pursuant to and in accordance with the National Basketball Players Association's ("NBPA") Regulations Governing Player Agents ("the Regulations") as promulgated effective March 7, 1986, and as may be amended thereafter from time to time. The Agent represents that in advance of executing this Agreement, he has read and familiarized himself with the Regulations and has applied for and been certified as a Player Agent by the NBPA.

This agreement shall apply only with respect to the Agent's performance of services described below.

## 2. Contract Services

Commencing on the date of this Agreement, the Agent agrees to represent the Player – to the extent requested by the Player – in conducting individual compensation negotiations for the performance of the Player's services as a professional basketball player with the Player's NBA club.

[If the Agent will not be "conducting individual compensation negotiations," then **insert** in lieu of those quoted words: "in assisting, advising or counseling the Player in connection with individual compensation negotiations".] After a contract with the Player's club is executed, the Agent agrees to continue to assist, advise and counsel the Player in enforcing his rights under that contract.

In performing these services the Agent is the NBPA's delegated representative and is acting in a fiduciary capacity on behalf of the Player. In no event shall the Agent have the authority to bind or commit the Player in any manner without the express prior consent of the Player and in no event shall the Agent execute a player contract on behalf of the Player.

## 3. Compensation for Services

The Player shall pay fees to the Agent for services performed pursuant to this Agreement in accordance with the following provisions:

(A) If the Player receives only the minimum compensation under the NBA-NBPA collective bargaining agreement ("CBA") applicable for the playing season or seasons covered by the individual contract, the Agent shall receive a fee of two percent (2%) of the compensa-

-1-

tion received by the player for each such season, unless a lesser per-
cent (%) or amount has been agreed to by the parties and is noted in
the space below;

[The parties hereto have agreed to the following lesser fee:

_____ Player's Initial _____

_____ Agent's Initial _____ ]

    (B)  If the Player receives compensation in excess of the minimum com-
pensation applicable under the CBA for one or more playing seasons,
the Agent shall receive a fee of four percent (4%) of the compensa-
tion received by the Player for each such playing season, unless a
lesser percent (%) or amount has been agreed to by the parties and
is noted in the space below;

[The parties hereto have agreed to the following lesser fee:

_____ Player's Initial _____

_____ Agent's Initial _____ ]

    (C)  If the Player is a rookie drafted in the first round of the NBA Draft who
receives compensation in accordance with the "Rookie Scale" set forth
in Article VIII of the CBA, the Agent shall receive a fee that is the
higher of: (i) 4% of the compensation in excess of the 80% amount
that is guaranteed under the Rookie Scale; or (ii) the amount payable
under subparagraph (A) above by a rookie who receives only the mini-
mum compensation under Article II, Section 6(b) of the CBA, unless a
lesser percent (%) or amount has been agreed to by the parties and is
noted in the space below;

[The parties hereto have agreed to the following lesser fee:

_____ Player's Initial _____

_____ Agent's Initial _____ ]

    In computing the allowable fee pursuant to paragraph 3(A),(B) or (C) above, the
term "compensation" shall include base salary, signing bonus and any performance bo-
nus actually received by the player; no other benefits provided in the player contract
shall be taken into account in the computing of the fee – including, but not limited to, the
fact that the contract guarantees compensation to the player for one or more seasons,
the value of a personal loan, an insurance policy, an automobile, or a residence, etc.

## 4. Time for Receipt of Payment of Agent's Fee

    The Agent shall not be entitled to receive any fee for the performance of his
services pursuant to this Agreement until the Player receives the compensation upon
which the fee is based; within fifteen (15) days of the Player's receipt of each compensa-
tion payment (as defined in paragraph 3 above) during the term of this Agreement or any
extension, renewal, or modification thereof, the Player shall make his fee payment to the
Agent in an amount computed in accordance with paragraph 3 above.

    The Player has sole discretion to decide that it is in his best interest to make an
advance fee payment(s) to his Agent, in which case the Agent is authorized to accept
that advance payment; provided, however, that (a) the advance payment cannot exceed
the fee prescribed in paragraph 3 above, and (b) with respect to any advance payment
relating to deferred compensation the fee shall be based upon the present value of that
compensation.

-2-

In no case shall the Agent accept, directly or indirectly, payment of his fee from the Player's club. Further, the amount of the Agent's fee shall not be discussed with the NBA club with whom the Agent is negotiating on behalf of the Player, nor shall the Agent or Player secure an agreement from the NBA club respecting the amount of the Agent's fee.

## 5. Expenses

All expenses incurred by the Agent in the performance of the services hereunder shall be solely the Agent's responsibility and shall not be reimbursable by the Player, except that with respect to each player contract negotiated under this Agreement (irrespective of the number of playing seasons covered) the Player shall (i) reimburse the Agent for reasonable travel, living and communications expenses (e.g., telephone, postage) actually incurred by the Agent up to One Thousand Dollars ($1,000.); provided, however, if the expenses exceed One Thousand Dollars ($1,000.), the Player shall be obligated to reimburse the Agent for the amount of the excess only if he gave express prior consent to the Agent to incur those expenses, and the Player shall (ii) pay or reimburse the Agent for the fees and expenses of any attorney, accountant, tax consultant or other professional engaged by the Agent at the Player's express request to render services to the Player, but only if such services are other than in connection with the negotiation and execution of such player contracts. The Player shall promptly pay all expenses, fees and costs for which he is obligated under this paragraph 5 upon receipt of an itemized statement thereof.

## 6. Term

The term of this Agreement shall begin on the date hereof and shall continue in effect until the expiration date of any player contract executed pursuant to this Agreement or any extension, renewal or modification of the Player's contract, whichever occurs later; provided, however, that either party may terminate this Agreement effective fifteen (15) days after written notice of termination is given to the other party; and, provided, further, that if the Agent's certification is suspended or revoked by the NBPA or the Agent is otherwise prohibited by the NBPA from performing the services he has agreed to perform herein, this Agreement automatically shall terminate effective as of the date of such suspension or termination.

Upon being terminated pursuant to either of the above provisions, the Agent shall be entitled to be compensated for the reasonable value of the services he has already performed based upon the fee schedule contained in paragraph 3 above.

## 7. Arbitration: Resolution of All Disputes Arising Out of This Agreement

Any and all disputes between the Player and the Agent involving the meaning, interpretation, application, or enforcement of this Agreement or the obligations of the parties under this Agreement shall be resolved exclusively through the Arbitration procedure set forth in Section 5 of the NBPA Regulations Governing Player Agents. As provided in Section 5(D) of those Regulations, if any arbitration hearing takes place, the NBPA may participate and present, by testimony or otherwise, any evidence relevant to the dispute. Because of the uniquely internal nature of any such dispute that may arise under this Agreement, the Player and the Agent agree that the arbitrator's award shall constitute a final and binding resolution of the dispute and neither party will seek judicial review on any ground.

-3-

8. **Notices**

All notices hereunder shall be effective if sent by certified mail, postage prepaid.

If to the Agent:     DAvid Lee   2017 E 74 St   Bklyn NY 11234

If to the Player:     Mitchell Robinson   4629 Francisco Verret Dr   New Orleans LA 70126

9. **Entire Agreement**

This Agreement sets forth the entire agreement between the parties. This Agreement cannot be amended or changed orally and any written amendments or changes shall be effective only to the extent that they are consistent with the Standard Form Agreement approved by the NBPA.

This Agreement replaces and supersedes any agreement between the parties entered into at any time on or after March 7, 1986 providing fees for services performed as defined in Sections 2 and 3 above.

10. **Governing Law**

This Agreement shall be construed, interpreted and enforced according to the laws of the State of New York.

11. **Filing**

This contract should be signed in triplicate. One (1) copy must be promptly delivered by the Agent to the NBPA Committee on Agent Regulation within five (5) days of its execution; one (1) copy must be promptly delivered by the Agent to the Player; and one (1) copy should be retained by the Agent.

## EXAMINE THIS CONTRACT CAREFULLY BEFORE SIGNING IT

IN WITNESS WHEREOF, the parties hereto have hereunder signed their names.

_____
PLAYER AGENT

_____
PLAYER

_____
PARENT or GUARDIAN (If Player is
under 21 Years of Age)

Player's Date of Birth

04 / 01 / 98

-4-