UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
DAVID LEE,                          :
                                    :
        Plaintiff,                  :
                                    :        21-cv-4213 (JSR)
            -v-                     :
                                    :        OPINION AND ORDER
                                    :
RAYMOND BROTHERS, IAM SPORTS &      :
ENTERTAINMENT, INC., and            :
INTERNATIONAL ATHLETE               :
MANAGEMENT, INC.,                   :
                                    :
        Defendants.                 :
                                    :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

    Being a professional basketball player's agent may itself be something of a tough competitive sport.  While it is perfectly proper for a player to "steal" a ball on-court, an agent's stealing another agent's client by offering the player added financial inducement (in this case, any young man's dream — a new pickup truck) may arguably violate the players' union rules.  But such a "foul" does not give rise to a legal claim, at least not in the circumstances of this case.

    Plaintiff David Lee is an agent certified by the National Basketball Players Association ("NBPA"), the players' union.  The certification agreement incorporates by reference the union's regulations.  In September 2017, Lee agreed to represent Mitchell Robinson, then a potential NBA draftee.  A few months later — and three months before the draft — Robinson terminated his agreement

1

with Lee, allegedly because defendant Raymond Brothers promised to buy Robinson a new Chevrolet Silverado pickup truck if he switched to the defendant's agency. Lee alleges that in offering that inducement Brothers, along with his affiliated companies, co-defendants IAM Sports & Entertainment, Inc. ("IAM Sports") and International Athlete Management, Inc. ("IAM"), violated the NBPA regulations. In his amended complaint, Lee seeks to recover damages for that alleged violation under a number of different theories. Defendants move to dismiss the complaint for failure to state a claim. For the reasons that follow, the Court grants the motion to dismiss.

**BACKGROUND**

I.   <u>Factual Background</u>[1]

Plaintiff David Lee is a certified NBPA player agent. ¶¶ 29, 53.[2]  The NBPA is a union for current professional basketball players in the National Basketball Association ("NBA"). ¶ 26. The NBPA regulates and certifies player agents who represent NBA players and requires – through its certification agreement – that all agents agree to the NBPA's regulations, which govern the relationship between players and their agents. ¶¶ 27-51.

---

[1] For the purposes of this motion, the well-pleaded allegations in the amended complaint are assumed to be true. <u>See</u> <u>Giunta v. Dingman</u>, 893 F.3d 73, 78-79 (2d Cir. 2018).

[2] Citations to ¶ ___ are to Lee's amended complaint, ECF No. 11.

On September 19, 2017, David Lee entered into a Standard Player Agent Contract (the "Contract") with Mitchell Robinson, a prospective NBA draft pick. ¶ 52. Under the terms of the Contract, Lee agreed to represent Robinson as Robison's certified player agent. ¶ 53. The Contract entitled Lee to a commission based on a percentage of whatever compensation Robinson received from his NBA team if drafted. ¶ 56. The agreement permitted either party to terminate the Contract on fifteen days' written notice. ¶ 57. A little over six months later, on March 28, 2018, Robinson sent Lee a letter purporting to terminate Lee's services as his agent, supposedly effective immediately. ¶¶ 59-60.

Defendant Raymond Brothers is a certified player agent with the NBPA and the president and CEO of co-defendants IAM Sports and IAM. ¶¶ 15; 101. According to the complaint, the defendants offered Robinson a brand-new pickup truck to induce him to terminate the Contract with Lee and to use defendants' agency services instead. This inducement led Robinson to send Lee the March 28, 2018 termination notice. ¶¶ 64-65. Then, two days later, on March 30, 2018, defendants ordered (and then fully paid for) a 2017 Chevrolet Silverado 1500 pickup truck from Best Chevrolet in Kenner, Louisiana. ¶ 66-67. Although Robison was listed as the "customer" on the order forms and receipt, defendants paid for the pickup truck using their own funds at a cost of $34,464.50. ¶¶ 69-72. Defendants wrote "Mitchell Car Loan" on

the memo line of the check used to pay for the pickup truck, but Lee alleges defendants did not intend at the time for the transaction to be a loan and did not enter into any loan document, loan agreement, or promissory note to memorialize the purported "loan." ¶ 73. On April 25, 2018, defendants entered into an agent contract with Robinson. ¶ 74.

In the NBA draft held on June 21, 2018, the New York Knicks drafted Robinson as their second-round pick. ¶ 91. And on July 8, 2018, Robinson signed a four-year contract with the Knicks. ¶ 93. His yearly base salary was well over one million dollars. ¶¶ 95-98. Since 2018, Robinson has played center for the Knicks. ¶ 92.

Lee alleges that defendants' purchase or loan of the pickup truck violated the NBPA regulation expressly prohibiting an agent from "[p]roviding or offering a monetary inducement . . . to any [p]layer (including a rookie) or college athlete to induce or encourage that person to utilize his services." ¶ 9 (quoting ECF No. 17-2 ("NBPA Regulations") § 3.B.2). Lee further alleges that had defendants not breached their agreement to follow the NBPA regulations by offering Robinson an inducement to terminate his contract with Lee and sign with them, Lee would have earned substantial commissions from his contract with Robinson. ¶ 99.

II. Procedural Background

Lee sued defendants in New York County Supreme Court on March 29, 2021. ¶ 18. On May 11, 2021, defendants removed the action to this Court on the basis of diversity jurisdiction. ¶ 19. On August 1, 2021, Lee filed his amended complaint against defendants alleging that (1) defendant Brothers breached his certification agreement with the NBPA when he offered Robinson the equivalent of a mandatory inducement (the paid-for pickup truck) to induce Robinson to sign with Brothers, in violation of the NBPA regulations, giving rise to damages to Lee as a third-party beneficiary of Brothers's certification agreement; (2) defendants IAM Sports and IAM tortiously interfered with defendant Brothers's certification agreement with the NBPA, giving rise to damages to Lee as a third-party beneficiary of that agreement; (3) defendants tortiously interfered with Lee's contract with Robinson; (4) defendants tortiously interfered with Lee's business relations with Robinson; and (5) defendants violation of the NBPA regulations was negligence per se that injured Lee. See ECF No. 11. Now before the Court is defendants' motion to dismiss Lee's amended complaint in its entirety.

## LEGAL STANDARD

On a motion to dismiss pursuant to Rule 12(b)(6), the Court "accept[s] all factual allegations in the complaint as true, and draw[s] all reasonable inferences in the plaintiff['s] favor." Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009). Conclusory

allegations and "[t]hreadbare recitals of the elements of a cause of action," however, are not presumed true.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Setting aside such allegations, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc., 847 F.3d 92, 94 (2d Cir. 2017) (quoting Iqbal, 556 U.S. at 678).  A claim for relief is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

**DISCUSSION**

I.   Third-Party Beneficiary Status

Both Counts I and II of the complaint assert that Lee is a third-party beneficiary of Brothers's certification agreement with the NBPA, which included an agreement to abide by the aforementioned rule not to offer monetary inducement to a player to get the player to hire the agent.

"Under New York law, a person is a third-party beneficiary of a contract where (1) there is a valid and binding contract between the contracting parties, (2) that contract was intended for the third party's benefit, and (3) the benefit to that third party is sufficiently immediate to indicate the assumption by the contracting party of a duty to compensate the third party if the

benefit is lost." In re George Washington Bridge Bus Station Dev. Venture LLC, 2021 WL 3403590, at *3 (S.D.N.Y. Aug. 4, 2021) (internal citations omitted).   "The party claiming that it is a third-party beneficiary 'has the burden of demonstrating that he has an enforceable right.'"   Id. (quoting Redzepagic v. Hammer, 2017 WL 780809, at *9 (S.D.N.Y. Feb. 27, 2017)).

In support of their motion to dismiss, defendants do not dispute that the NBLA regulations are part of a binding contract between defendants and the NBPA; rather, they argue that Lee cannot bring a claim directly enforcing the NBPA regulations because he is not a third-party beneficiary of that contract.   Put another way, defendants argue that the power to enforce the contract, or to penalize defendants for their breach, lies exclusively with the NBPA.

In the amended complaint, Lee alleges that section 3.B.2 of the NBPA regulations is an "anti-poaching provision" designed to prevent agents from stealing the clients of other agents.   ¶ 110. Although conceding that not all parts of the NBLA regulations are intended to benefit player agents, Lee argues that one goal of the NBPA regulations is to protect player agents, as reflected in its stated objectives of "establish[ing] and enforce[ing] uniform standard of conduct and fiduciary responsibility applicable to all certified Player Agents" and providing "Players and Player Agents with an expeditious, fair, informal, cost efficient and exclusive

procedure for resolving any disputes concerning their relationship, transaction or contractual obligations." NBPA Regulations at 6.

In connection with section 3.B.2 in particular, Lee argues that the intent to benefit other player agents is evident because, except for the losing agent, no other party meaningfully loses something of value when one agent poaches a client from another. See Bd. of Mgrs. of Gateway Condominium v. Gateway II, LLC, 2016 WL 1424560, at *5 (Supt. Ct. N.Y. Co. Jan. 5, 2016) ("An intent to benefit a third party may be found where . . . no one other than the third party can recover if the promisor breaches the contract"); Cohen v. CASSM Realty Corp., 54 Misc. 3d 256, 274-75 (Sup. Ct. N.Y. Co. 2016) (tenant in an apartment building allowed to enforce a provision in the building's bylaws requiring each residence to have at least one artist as a resident on the grounds that the requirement was imposed "for no reasons other than for the benefit of the building residents . . . who are thus the beneficiaries of the building's status as an artist's residence")

Additionally, Lee argues that the arbitration provisions in Section 5 of the NBPA regulations, which provide for internal arbitrations for certain categories of disputes, including disputes between player agents concerning the division of fees from the joint representation of a player, show an intent for

agents to have certain private rights of actions pertaining to the regulations.  See NBPA Regulations at 33.

In reply, defendants argue that Lee's claim to being an intended third-party beneficiary of the NBPA regulations is undermined by the text of the regulations themselves.  With regard to the language about the NBPA regulations' objectives, defendants argue that these merely speak to an intention to set uniform standards for player agents for the protection of players and to provide a means of resolving disputes between players and agents, rather than between agents and other agents.  Further, in response to Lee's argument that no party other than another player agent can recover from an agent's breach of section 3.B.2, defendants note that the NBPA regulations contain a disciplinary procedure for agents who violate any of the regulation's provisions.  See NBPA Regulations at 39.

The Court is of the view that the language of the NBPA regulations strongly suggests that the players, as the members of the union promulgating the regulations, are the intended beneficiaries of the player union's rules, including its rule banning improper inducements.  Indeed, the regulations state that one purpose is "[t]o afford each Player the opportunity to select a certified Player Agent who, in turn, has agreed to comply with these Regulations, to represent or advise Players as a fiduciary with honesty, competency and loyalty, and act consistent with the

Player's membership in a collective bargaining unit." NBPA Regulations at 7. By its own terms, Section 3.B.2 is intended to "effectuate the objectives" of the regulations, which, while explicitly stating an intention to protect players, contain no equivalent statement of intent to benefit player agents. Id. at 25. Further, the language of that section specifically states that the prohibited conduct is "subject to discipline," with a disciplinary procedure set out in detail within the regulations that is run by the NBPA Executive Committee. Id. at 25, 39. Thus, on its face, the regulations evince an intent for violations to be enforced through an internal disciplinary procedure, precluding a finding of an intention to allow third-party enforcement through private action. See Piccoli A/S v. Calvin Klein Jeanswear Co., 19 F. Supp. 2d 157, 164 (S.D.N.Y. 1998) ("[Plaintiff] cannot establish intended third-party beneficiary status because it is apparent from the face of the contract that the parties intended to limit to themselves the ability to enforce the agreement.").

Because Lee has not established that he is an intended third-party beneficiary of the contract between defendants and the NBPA, the Court grants defendants' motion to dismiss on Counts One and Two.

## II. Tortious Interference

Count Three claims defendants tortiously interfered with the Contract between Lee and Robinson by offering Robinson a pickup truck to induce him to terminate the Contract with Lee.  Count Four, relatedly, claims that defendants' conduct tortiously interfered with Lee's business relations with Robinson. Defendants argue that both counts should be dismissed.[3]

### a. Tortious Interference with Present Contract

"Under New York law, the elements of tortious interference with contract are (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." Kirch v. Liberty Media Corp., 449 F.3d 388, 401-02 (2d Cir. 2006) (internal citations omitted).

Because one element of a tortious interference claim is actual breach, New York courts have held that a contract that is terminable at will cannot be the basis for a tortious interference

---

[3] Defendants argue among other things, that Count Four fails to claim interference with prospective business relations and instead only claims interference with present business relations, for which no cause of action exists under New York law.  Because the Court dismisses on another ground, it does not reach this issue or the others raised in defendants' submissions in connection to Count Four. Similarly, the Court does not reach the additional arguments raised in defendants' submissions for dismissing Count Three.

claim.   See Am. Recycling & Mfg. Co. v. Kemp, 165 A.D.3d 1604, 1606 (N.Y. App. Div. 2018).   Instead, such claims must be brought as based upon tortious interference with prospective business relations.   See Snyder v. Sony Music Ent., Inc., 252 A.D.2d 294, 299 (N.Y. App. Div. 1999) ("[T]he case law is clear that agreements that are terminable at will are classified as only prospective contractual relations, and thus cannot support a claim for tortious interference with existing contracts." (internal citations omitted)).

Although the contract at issue was terminable at will, Lee argues that there was nevertheless a breach because Robinson terminated without adhering to the contract's minimum fifteen days' notice provision.   See ¶ 60; ECF No. 11 at 32.   However, as defendants argue, Lee fails to plead any damages resulting from the breach of notice requirement.   The only damages pled by Lee relate to the commissions he would have earned upon Robinson's signing with the Knicks.   ¶¶ 91-99.   But even had Robinson adhered to the notice requirement, the Contract would have terminated on April 12, 2018 — more than two months before the NBA Draft.   See ¶ 91.   Indeed, at oral argument, Lee's counsel could not identify any damages resulting from the breach of the notice requirement. See Sept. 15, 2021 Hearing Transcript ("Tr.") at 9:12-10:13. Because Lee has failed to adequately plead damages resulting from the alleged breach, Count Three is dismissed.

b. Tortious Interference with Business Relations

A claim of tortious interference with prospective business relations "is a difficult one to sustain with requirements 'more demanding than those for interference with [the] performance of an existing contract.'" PKG Grp., LLC v. Gamma Croma, S.p.A., 446 F. Supp. 2d 249, 251 (S.D.N.Y. 2006) (quoting Fine v. Dudley D. Doernberg & Co., 203 A.D.2d 419, 419 (N.Y. App. Div. 1994)). "A plaintiff must prove that '(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.'" Id. (quoting Carvel Corp. v. Noonan, 350 F.3d 6, 17 (2d Cir.2003)). "In all but the most egregious circumstances, 'dishonest, unfair, or improper means' must amount to misconduct that constitutes either a crime or an independent tort." Id.

More specifically, in cases involving business competitors, courts applying New York law have held that "where the interference is intended at least in part to advance the competing interest of the interferer," the plaintiff must show either an unlawful restraint of trade" or that the means employed where "wrongful." Seven Star Shoe Co. v. Strictly Goodies, Inc., 657 F. Supp. 917, 920 (S.D.N.Y. 1987). "Wrongful" in this context includes "physical violence, fraud or misrepresentation, civil suits and criminal

prosecutions, and some degrees of economic pressure." Id. (quoting Guard-Life Corp. v. S. Parker Hardware Mfg. Corp., 406 N.E.2d 445, 448 (N.Y. 1980)).

Lee argues that defendants improperly used "some degree[] of economic pressure" when they "lured an underage player . . . with a brand new pickup truck" in direct violation of section 3.B.2 of the NBPA regulations. ECF No. 16 at 22. As an initial matter, Lee's agreement with Robinson, which was attached as an exhibit to the complaint, reveals that Robinson was nineteen when the events at issue occurred. See ECF No. 11 at 33; Garcia v. Watts, 2009 WL 2777085, at *5 (S.D.N.Y. Sept. 1, 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statement or documents incorporated in it by reference."). Lee's counsel conceded this point at oral argument. See Tr. at 8:15-19; 13:23-25. Thus, Robinson was not underage at the time.

Further, as the New York Court of Appeals has explained, to make out a tortious interference claim on the basis of economic pressure, the complaint must plead facts that are "extreme and unfair." See Carvel Corp. v. Noonan, 818 N.E.2d 1100, 1105 (N.Y. 2004). In Scutti Enterprises, LLC. v. Park Place Ent. Corp., 322 F.3d 211, 216 (2d Cir. 2003), the Second Circuit proposed a two-part inquiry for determining whether economic pressure was wrongfully exerted. "First, the court asks whether the actions by the defendants rise to the level of economic pressure (and not

mere persuasion). Second, if the actions of the defendants do rise to the level of economic pressure, the court then inquires whether the pressure is related or unrelated to the business in which the defendants and the plaintiff engage." Darby Trading Inc. v. Shell Int'l Trading & Shipping Co., 568 F. Supp. 2d 329, 344 (S.D.N.Y. 2008) (citing Scutti, 322 F.3d at 216).

Here, Lee's claim fails on the first leg of the inquiry. In Scutti, the court quoted language from the Restatement (Second of Torts) listing factors to be considered in determining whether the pressure exerted is proper, among them "the extent of the harm that it threatens" and the "the degree of coercion involved." 322 F.3d at 216 (quoting Restatement (Second) of Torts § 767 cmt. c (1979)). But Lee fails to allege any harm to Robinson resulting from defendants' offer. Nor does Lee allege any facts indicating the degree of coercion involved other than its inaccurate statement that Robinson was underage. See ECF No. 16 at 22. As such, Lee has failed to make the necessary showing.

Because Lee has not adequately alleged that defendants "acted solely out of malice, or used dishonest, unfair, or improper means," PKG Grp., 446 F. Supp. 2d at 251, Count Four is dismissed.

III. Negligence Per Se

The fifth count of the amended complaint alleges negligence per se against defendants based on the alleged violation of section

3.B.2 of the NBPA regulations.  However, under New York law, "only violations of state statutes can constitute negligence per se." In re Sept. 11 Prop. Damage & Bus. Loss Litig., 468 F. Supp. 2d 508, 522 (S.D.N.Y. 2006), aff'd sub nom. Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P., 737 F.3d 166 (2d Cir. 2013).  Lee cites no contrary authorities.  Because Lee has not alleged a violation of a state statute, Count Five is dismissed.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion and dismisses Lee's amended complaint with prejudice.  The Clerk of the Court is therefore directed to close the case and enter final judgment in favor of defendants.

SO ORDERED.

Dated:    New York, NY
          10/6, 2021

JED S. RAKOFF, U.S.D.J.